# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>EMMANUEL LEWIS HUGGINS,<br><br>*Defendant*. | CASE NO. 3:11-cr-15<br><br>MEMORANDUM OPINION<br>& ORDER<br><br>JUDGE NORMAN K. MOON |

In 2011, Defendant Emmanuel Lewis Huggins pleaded guilty to one count of conspiracy to possess with intent to distribute 100 grams or more of a detectable amount of PCP, in violation of 21 U.S.C. § 846. The Court sentenced Huggins to 150 months, after the Government filed a substantial assistance motion. Huggins now seeks a reduction of his sentence to time served, based on extraordinary and compelling circumstances pursuant to 18 U.S.C. § 3582(c)(1). Huggins argues that two extraordinary and compelling circumstances warrant his release. First, he claims that his health conditions—specifically his sarcoidosis and asthma—put him at a higher risk of contracting COVID-19 and suffering severe complications should he contract the virus. Second, he claims that he would no longer be sentenced as a career offender under the sentencing guidelines after *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). The Government opposes Huggins' motion.

The Court finds that the disparity in length of sentence Huggins would face today, post-*Norman*, is an extraordinary and compelling circumstance that warrants relief. Taking the § 3553(a) factors into account, the Court will reduce Huggins' sentence to time served plus fourteen days, and grant his motion for compassionate release.

1

## BACKGROUND

The Blude Ridge Narcotics Task Force initiated an undercover investigation into the distribution of PCP throughout Culpeper, Virginia, in the summer of 2010. Dkt. 33 ¶ 7. Through the use of confidential informants, officers identified Huggins as the source of PCP distribution. *Id.* During the investigation, confidential informants made seven controlled PCP purchases from Huggins' co-conspirators. *Id.* ¶ 8. The officers arrested Huggins in March 2011. *Id.* ¶ 9. Overall, Huggins was responsible for distribution or possession with intent to distribute at least 1065 grams (38 ounces) of PCP during the conspiracy. *Id.* ¶ 10.

In April 2011, a federal grand jury returned a four count indictment against Huggins. *Id.* ¶ 1. The Government charged him with conspiracy to distribute and possession with intent to distribute 100 grams or more of PCP (count one); distribution of PCP (count two); distribution of 100 grams or more of PCP (count three); and possession with intent to distribute 100 grams or more of PCP (count four). *Id.* Soon after, the Government filed a notice of enhanced penalty based on Huggins' 2004 conviction for distribution of cocaine. *Id.* ¶ 2.

On June 13, 2011, Huggins pleaded guilty to count one of the indictment, pursuant to the terms of a written plea agreement. Dkts. 23, 26. In exchange for his plea, the Government, among other things, agreed to dismiss all other counts against Huggins, stipulated that Huggins would receive a reduction for acceptance of responsibility, and agreed to a sentencing guideline calculation. Dkt. 26. His recommended guideline range was 262 to 327 months, based on a total offense level of 34 and a criminal history category of VI. Dkt. 33 ¶ 55. Prior to sentencing, the Government filed a motion for substantial assistance, which the Court granted. Dkt. 32. The Court sentenced Huggins to 150 months' incarceration and eight years of supervised release on count one. In 2015, the Court denied Huggins' Amendment 782 motion because he had been sentenced

under the career offender guideline range, making him ineligible for reduction under 18 U.S.C. § 3582(c)(2). Dkts. 43, 44.

Huggins currently resides in a halfway house through the Residential Reentry Management program. Dkt. 61 at 3. He has completed over 90 percent of his sentence and is scheduled for release on December 4, 2021. *Id.*; Dkt. 57 at 2.

## DISCUSSION

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). A defendant seeking relief under § 3582(c)(1)(A) has the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. McMillan*, No. 7:08-cr-31, 2020 WL 3213399, at *2 (W.D. Va. June 15, 2020). If a defendant has exhausted his remedies and shows that extraordinary and compelling reasons support a sentence reduction, the Court must consider the applicable sentencing factors under 18 U.S.C. § 3553(a) to determine whether a reduction is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A).

1. Exhaustion of Administrative Remedies

The parties agree that Huggins exhausted administrative remedies. Dkt. 61 at 6; Dkt. 57 at 2; Dkt. 57-1. Huggins petitioned the warden for compassionate release on January 4, 2021 and more than thirty days have elapsed without a response. Dkt. 57-1. Accordingly, the Court agrees with the parties and finds that Huggins satisfied the exhaustion requirement.

2. Extraordinary and Compelling Reasons

The Fourth Circuit has held that "district courts are 'empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (emphasis in original).

Huggins makes two arguments in support of his motion for compassionate release: (1) that his medical conditions make him more susceptible for contracting COVID-19 and more likely to suffer serious consequences if he does contract COVID-19, and (2) that the Fourth Circuit's holding in *Norman*—that conspiracy to possess a controlled substance with intent to distribute a controlled substance in violation of 21 U.S.C. § 846 is not categorically a "controlled substance offense" under U.S.S.G. § 4B1.2(b)—constitutes an extraordinary and compelling circumstance warranting release. *See* 935 F.3d at 239. The Court considers each argument in turn.

a. **Particularized Susceptibility to and Increased Risk of Contracting COVID-19**

"In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Blevins*, 832 F. App'x 192, 192 (4th Cir. 2020) (per curiam).

The parties do not dispute that Huggins is diagnosed with sarcoidosis and asthma. Dkt. 61 at 8; Dkt. 57 at 7–8. However, these conditions do not rise to the level of extraordinary and compelling circumstances. Although the Centers for Disease Control ("CDC") recognize "moderate-to-severe" asthma as a co-morbidity factor that may place an individual at a heightened risk of severe illness from COVID-19, Huggins' medical records indicate that his asthma is in "remission" and controlled by albuterol to be used "as needed." Dkt. 65 at 1, 8. The CDC does not recognize sarcoidosis as a risk factor at all. Additionally, Huggins was diagnosed with COVID-19 earlier this year and was asymptomatic and found to have clear lungs and stable vital signs. *Id.* at

4

2, 14–15. Huggins' arguments are undercut by his prior diagnosis and reaction to COVID-19. For these reasons, the Court concludes that Huggins' has not met his burden to show that his medical conditions constitute an extraordinary and compelling circumstance warranting release.

### b. *Norman*'s Impact on Career Offender Enhancement

Huggins also argues that the Fourth Circuit's holding in *Norman*—that conspiracy to possess a controlled substance with intent to distribute a controlled substance in violation of 21 U.S.C. § 846 is not categorically a "controlled substance offense" under U.S.S.G. § 4B1.2(b)—constitutes an extraordinary and compelling circumstance warranting release. *See* 935 F.3d at 239.

Although the Fourth Circuit has held that *Norman*'s holding must be applied to a recalculation of the guidelines range upon resentencing under the First Step Act, *see Lancaster*, 997 F.3d at 175, 177, it has not yet considered whether *Norman*'s holding, standing alone, constitutes an extraordinary and compelling circumstance warranting relief.

However, the Fourth Circuit has held that a district court may consider "the severity of the defendant['s] . . . sentence[] and the extent of the disparity between the defendant['s] sentence[] and [that] provided for under [current law]" when deciding a motion for compassionate release. *McCoy*, 981 F.3d at 286. In *McCoy*, the Fourth Circuit considered a similar non-retroactive change in the law with an "exceptionally dramatic" impact on sentencing—"[t]he First Step Act's clarification of § 924(c)."—and determined that "stacked" § 924(c) sentences can constitute an "extraordinary and compelling" reason for relief under § 3582(c)(1)(A). *Id.* at 285. The court pointed to "two distinct features" of § 924(c) sentences relevant to applying the "extraordinary and compelling" reason standard: (1) "the sheer and unusual length of the sentences," particularly in comparison to the "national average for a federal murder sentence in fiscal year 2018[, which] was 291 months," or just over 24 years, and (2) the "gross disparity between those sentences and the

5

sentences Congress now believes to be an appropriate penalty for [a defendant's] conduct." *Id.* (internal quotation marks and citations omitted).

Following *McCoy*, other district courts in this Circuit have found that they "may consider changes in sentencing law—even nonretroactive ones—in assessing whether a defendant has shown extraordinary and compelling reasons warrant a reduction in his sentence." *United States v. Stuart*, No. 5:92-CR-114-BR-3, 2020 WL 7232074, at *3 (E.D.N.C. Dec. 8, 2020). Two courts have specifically addressed defendants' arguments that they would no longer be considered career offenders under *Norman* if sentenced today. *See United States v. Trice*, No. 7:13-CR-34-1, 2021 WL 402462, at *3 (W.D. Va. Feb. 3, 2021) (Conrad, J.) (finding extraordinary and compelling reason for compassionate release where defendant sentenced to 151 months, a downward departure from his career offender guideline range of 262 to 327 months, would face a guideline range of 100 to 125 months after *Norman*); *see also United States v. Spencer*, — F. Supp. 3d —, No. 2:11-cr-30, 2021 WL 713287, at *3–4 (E.D. Va. Feb. 24, 2021), *appeal filed*, No. 21-6346 (4th Cir. Mar. 8, 2021) (concluding that defendant's history and characteristics—including "an exceptionally lengthy adult criminal history," being "incarcerated for substantial periods of time prior to the instant offense," and engaging "conduct with respect to the instant offense . . . almost immediately after he was released from prison"—counseled against finding extraordinary and compelling reasons for sentence reduction even though defendant sentenced to 235 months, the top of his career offender guideline range of 188 to 235 months, would face a guideline range of 110 to 137 months after *Norman*).

Here, *Norman* would change Huggins' original guideline range from 262 to 327 months to 120 to 150 months. Neither the original guideline range nor the post-*Norman* guideline range approaches a sentence of "sheer and unusual length" comparable to the ones that the Fourth Circuit

considered in *McCoy*. 981 F.3d at 285 (noting that today, the defendants' sentences would be "dramatically shorter— in most cases, by 30 years—than the ones they received"). Still, the applicable guideline range, had Huggins been sentenced today, is more than half of what it was originally—simply because he was sentenced before *Norman*. That difference is also present when taking into account the Government's substantial assistance motion, which was an approximately 42% downward departure from the low-end of the guidelines. The same accounting would place Huggins within a range of 70 to 87 months today. The sentence Huggins received is at least 63 months, or more than five years, longer than the high end of this revised guideline range, and nearly twice the median of this revised range. While not as dramatic as the decades-long differences the Fourth Circuit considered in *McCoy*, the Court finds a "gross disparity" in the sentences that is not warranted. 981 F.3d at 285.[1]

Under these circumstances, the Court finds that Huggins' sentence is an "extraordinary and compelling" reason warranting a sentence reduction in light of *Norman*.

### 3. Consideration of § 3553(a) Factors

If the Court finds extraordinary and compelling reasons that would support a sentence reduction, it still must "consider[] the factors set forth in section 3553(a) to the extent that they are

---

[1] The Court is also unpersuaded by the Government's argument that if Huggins had been sentenced after the decision in *Norman*, that the Government would have offered him a different plea. Dkt. 61 at 14–15. Indeed, numerous cases in this district have rejected the Government's argument. *See United States v. Steppe*, 3:16cr22, ECF 328 (W.D. Va. Apr. 20, 2021) (Conrad, J.) ("[T]his Court has repeatedly rejected attempts by the government to argue it would have chosen a different prosecutorial strategy had different law governed at the time."); *United States v. Smith*, 379 F. Supp. 3d 543, 548 (W.D. Va. 2019) (Urbanski, C.J.) ("The retroactive assumption suggested by the government simply is too speculative a basis on which to determine [the defendant's] eligibility for a sentence reduction); *United States v. Stanback*, 377 F. Supp. 3d 618, 624 (W.D. Va. 2019) (Urbanski, C.J.).

applicable." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Kibble*, 992 F.3d 326, 331–32 (4th Cir. 2021).

To start, the nature and circumstances of the underlying offense are serious. As the supplier of the conspiracy, Huggins trafficked over 1000 grams of PCP into the Western District. Dkt. 33 ¶¶ 8–9. His arrest also came while still under supervision for two prior felony convictions. *Id.* ¶¶ 23–25, 28, 31, 34.

With respect to the defendant's history and characteristics and the need for the sentence to provide him with treatment or training, Huggins submits that he has been rehabilitated while incarcerated. BOP classifies him as a low security risk—signified by his current custody at a halfway house. Dkt. 57-3. Huggins does have a single serious disciplinary charge for fighting with another inmate. *Id.* However, the infraction was seven years ago, in 2014, and he has had a clean disciplinary record since that time. Huggins completed his GED while serving a prior sentence, but continues to take classes ranging from parenting and personal finance to starting a small business to Spanish. *Id.* The BOP has approved Huggins' release plan. Dkt. 57 at 2. He plans to live with his fiancée in Waldorf, Maryland. *Id.* And, as mentioned, he has completed over 90 percent of his sentence.

The Court must also consider the need for the sentence to afford adequate deterrence to criminal conduct and to protect the public from Huggins' criminal conduct. Huggins currently resides at a halfway house where he interacts daily with the community. The Government does not put forward any argument as to how an additional five months in the halfway house would better protect the community from criminal conduct.

Finally, the Court must consider the need for the sentence to provide just punishment for Huggins' offense. As noted above, following *Norman*, Huggins' original guideline range of 262

to 327 months would become 120 to 150 months without the career offender enhancement. Taking into account a 42% downward departure of the high end of that range would put him at a sentence of 87 months today.

The Court finds that immediate release would promote respect for the law, provide just punishment for Huggins' offense, adequately deter criminal conduct, and protect the public from Huggins' crimes. The Court is encouraged by Huggins' positive conduct while incarcerated and finds that his rehabilitation, in light of the post-*Norman* changes to his guidelines calculations, outweighs the factors supporting continued incarceration. Accordingly, the Court finds that a sentence of time served plus fourteen days, followed by an eight-year term of supervised release, results in a sufficient, but not greater than necessary sentence.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** Huggins' motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Dkt. 47. Specifically, the Court **MODIFIES** Huggins' sentence to time served plus fourteen days, followed by an eight-year term of supervised release. As Huggins notes in his supplemental response, Dkt. 69, the additional fourteen days allow him to look for meaningful work near his planned residence—to avoid a lapse in income—and provide him the opportunity to give proper notice of his impending departure to his current employer. Importantly, the U.S. Probation Office will have adequate time to verify, assess, and approve Huggins' release plan.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion and Order to Defendant and all counsel of record.

Entered this \_\_16th\_\_ day of July, 2021.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE